The next case on for argument is United States, excuse me, United States v. Guerrero. Good morning, may it please the court. Yan-Chan Lee, Federal Defenders of New York for Jose Beltran-Guerrero. We asked the court to follow the lead of the 5th, 8th, and 9th circuits and hold that drug trafficking offense as defined in former 2L1.2 does not incorporate state law definitions of controlled substance and thus does not encompass an overbroad state law that criminalizes substances not regulated either federally or by most American states. There's no real dispute that the Arizona law here is overbroad in The other courts of appeals to have considered this have applied a modified categorical approach? Yes, eventually after agreeing with us on the question of how to read the term drug trafficking offense and then apply the modified categorical approach to the state law at issue in those cases. Yes, Your Honor. How do those really help you because you're not asking us to apply a modified categorical approach, you're asking us to apply... That's right, yes, I understand the court's question. So we, they agree with us on the first step and that's really the only step we need. The second step is the divisibility analysis and... Why would we not then follow them on the second step? Oh, well it's a, Your Honor, because it's a completely, it's a different law. The Arizona law here is essentially identical to the, I think it's New York criminal sale in the fifth degree that this court in Harbin v. Sessions ruled was indivisible based on the text, the state law, state law, state case law, and state jury instructions. And we've sort of gone through those in our briefs. And I'd be happy to go through those in detail, but I would also like to point out that the government has essentially given up this point. Government makes no argument on appeal that this statute is divisible. And so because those, we only need those courts for the first step because the second step, I think, is a winner for us anyways. So why shouldn't we just be looking to the plain language at issue and just observe whether he's been convicted of a state law involving controlled substance? Well, yes, Your Honor, I think that, you know, I think the plain language, I think it's fair to say that the plain language is ambiguous. It's not entirely clear which way it would cut. Tease out that ambiguity for me for a moment. Well, in the sense that it just says, you know, it's an offense under federal, state, or local law that prohibits essentially the distribution of a controlled substance. Okay? The reason Is the term controlled substance ambiguous? That is the term that's ambiguous. So whether controlled substance means any substance controlled by, you know, whatever the jurisdiction decides to call controlled substance or whether it has sort of a generic federal meaning. And this is where sort of, you know, this is a situation where, you know, like in baseball with the tie goes to the runner. Because there's a very strong presumption. Well, it should be, right? The ref might get it wrong. But, you know, the idea is that there's a very strong presumption of reading federal law, in particular federal sentencing enhancements, and in particular, you know, national guidelines, right? To read those laws as not incorporating state law definitions. But if we look at the provision at issue, and then I think we just drop down where, you know, just the next, I'm talking about the commentary, and you're obviously familiar with it, but part little IV talks about drug trafficking offense and what that means, and makes reference to our term controlled substances. And I agree with you. I mean, Vermont's got, I think they call them narcotic drugs or something. They don't use that term, and I'm sure other states do something different. Then we look at the firearms offense, the next one, part Little Roman 5, and it makes specific reference to a federal provision, 18 U.S.C., the firearms provisions that we're all familiar with, right? Yes, Your Honor. All right, so we know that the Commission sort of knows how specifically to engage a federal definition, and I would suggest it did not do so in the former term. So there's some wiggle room there, is there not? Yes, Your Honor. So again, the fact that the statute could be clearer, right? So we, I agree with you, it could be clearer. But that doesn't answer the question. It's really the presumption is really a very strong presumption the other way, right? If you can't tell from the face of the statute whether it incorporates state law norms or not, the strong default is that it does not. You know, ever since, this is not just a general Popkin, the Jerome presumption that this Court in 1975 in Popkin said governed in the Title VII context, but Taylor in particular, right, said that Congress has a general approach of defining predicates, predicate offenses that generate sentencing enhancements in federal law, that those are almost always defined uniformly and generically and do not vary according to state law definitions. In fact, I'd venture to say that it's a near unicorn to find a federal sentencing predicate that enhances a sentence based on whatever the State chooses to call it. And in fact, I think I can only find one in the entire guidelines. It's in 2T1.1. It's pointed out by the government and it's relied on by this Court in Savin. It's in the context of, you know, tax evasion, and if tax evasion is the context, it was involved in proceeds of, I think, a criminal activity. And there's a very, very strong definition in that case of what criminal activity is that essentially says that, you know, criminal activity means anything that is a crime under, you know, any federal, state, or local law. And that's the kind of plain statement that you need to construe an even ambiguous statute as incorporating state law norms. Am I right from your letter? You think we should hold this case for the decision in Townsend? Well, yes. So, you know, I think the letter is redundant given Judge Carney's presence, but it's up to the Court. I don't know what the Court's doing in Townsend. I think that I would concede and I believe my adversary would concede that a ruling on, I think it's 4B1.2, the term controlled substance, would control this issue here of the definition of drug trafficking offense. They're essentially indistinguishable. We also want to alert you that at or about the same time there is a case which does not deal with controlled substances, United States v. Castillo, docket in our Court here, 164129, which is addressing an issue of how we go about interpreting, how the Court goes about interpreting. It purports to address that issue. There's an order in it you should look at. Yes. Oh, no. It's from my, it's that case. You guys are doing it? Yeah, we're doing that case. So I'm aware of the... So that may well have a bearing on this case. And I would ask more generally, you know, we have had many categorical and modified categorical approaches involving New York law, Arizona law, Connecticut law, and so on in our docket that call on us to derive a generalized federal offense of robbery or what have you. And increasingly it seems to me that this is a project, you know, for the federal defenders generally, or the American Law Institute generally, because it sometimes will involve examining the definitions of offenses across all of the states and looking to any federal interpretations as well. Is any project like that underway at the federal defenders or in some other national organization? We are not aware of such a thing. You know, we represent individual defendants and we make the arguments when they come up. Obviously we have been involved in the same arguments as well. I don't know what the solution is, except that in each individual case this comes up. I would say regarding Castillo that this is, I don't think, controlled by that order, because in Castillo the issue was generic manslaughter and I understand that how states define that is all over the map. Have you seen the order? Yes, I have seen it. I understand there is also . . . Part of the, I mean, I think that what Judge Hall might be referring to and what caught my attention also in Castillo is that the order requests the government and the defenders to consult with each other to determine what materials we should look to, what's our analytical approach in determining what a generic federal offense would be, whether it's manslaughter, robbery, burglary, what have you. It's an approach driven order. Yes, I understand. I assume that the Federal Defender Center preparing material to address that analytical question, is that right? Yes, I believe so. I'm not personally involved in responding to the order in Castillo, but I'm aware of it. I think that the, in terms of the approach, I think that what, this all comes from Taylor, right, in 1986, and what Taylor said was a generic offense is the contemporary understanding of the offense in most American jurisdictions. And what did Taylor look to? Federal law, in particular. Taylor looked to the laws of every state. Taylor looked to the Milo Pino Code. I think he may have looked to the Black's Law Dictionary and so on. And in answering your argument, I'm sorry, your question, Judge Hall, my point is simply that those, you know, whatever questions there may be about how to come up with a generic offense in sort of on the borders, and I think that manslaughter is sort of one of these more difficult cases. I think it's much easier here, where the Federal Controlled Substance Act and the substantial majority of American jurisdictions do not criminalize these two substances, phenolphenol and benzophenol. These two in particular have been delisted from the Federal Controlled Substance Act since 1986, so more than 30 years, and not just for a trivial reason, right? The DEA said, you know, they were temporarily listed as an emergency measure and then delisted because after consulting of laboratory studies by universities, that the substances were essentially inactive and there was no evidence of abuse. And so, you know, we . . . JUSTICE SCALIA. Behind all of that, I mean, we get to that if we're at the categorical approach and we figure out, perhaps with some guidance from the Castillo panel, how we look at that issue. MR. GARRETT. So what I would point out, again, to go back to Your Honor's first question about the plain language again, is that this is what the government relies on and what district courts that have ruled against us have relied on is the phrase at the beginning of the definition, offense under federal, state, or local law. And this is just not a plain statement of an intent to incorporate state law norms because we know that the exact same phrase is used in the parallel definition of crime of violence and that lists a whole bunch of offenses that everybody agrees, this Court and the Sentencing Commission agrees have generic, uniform federal definitions. Robbery, statutory rape, kidnapping, and so on. And so, at the least, that statement is not a plain indication of an intent to incorporate state law norms. The Jerome presumption of uniformity governs and, therefore, we prevail. Thank you, Your Honor. THE COURT. Thank you. Thank you, Mr. Lee. You've reserved two minutes for rebuttal. Mr. Denton. MR. DENTON. May it please the Court, David Denton for the United States. I also represented the United States in the district court in this matter. The district court correctly concluded that the key analytical step that the defendant relies on here is not necessary, that it is not necessary in every case to resort to a generic definition of a predicate offense under the guidelines. Writing for the Court in Nijuan v. Holder, Justice Breyer explicitly acknowledged that there are categories of This is not burglary or robbery or manslaughter. This is actually an offense with essentially an ever-changing definition. As Your Honors were just discussing, this is something where administrative action by the DEA administrator can add and remove substances from the federal list. There are different procedures in different states, some of which do it administratively as well. So the idea that there is some generic list of controlled substances is simply a The guideline that we're looking at does use the term controlled substance, doesn't it? MR. DENTON. It does. And the definition of a controlled substance, for example, in Black's Law Dictionary, is simply any substance controlled by law. Whereas if you were to look up the definition for burglary, for example, it talks about the unlawful entry into a dwelling or other building and sets out a set of circumstances. This was very significant for the Supreme Court, which the defendant relies on, that the state law definitions of sexual abuse of a minor there differed from, in that case as well, the Black's Law Dictionary definition, which talked about a specific age of consent of 16. So in a circumstance like this, where the only definition we have for the term is whatever a state chooses to define it as, then by using that term, by not incorporating a cross-reference to federal law, and by applying the predicate to offenses under federal, state, or local law, the district court was correct to conclude that that's all you need to look at state law for the definition  JUSTICE SCALIA. Counsel, you agree that we should hold a case for Townsend? MR. DENTON. I think that depends on a couple of wrinkles in Townsend, Your Honor. JUSTICE SCALIA. We don't know that until we see the decision in Townsend. MR. DENTON. I guess that's right, Your Honor. There are certainly similar issues. This is heavily. JUSTICE SCALIA. And you agree, as a technical matter, that this is, the statute is an indivisible statute? MR. DENTON. I think that it is hard to come to any other conclusion after Harbin. And I think that is relevant when the Court is considering the effect of the other circuit's decisions here. JUSTICE SCALIA. And you did not appeal the determination regarding divisibility, right? MR. DENTON. That's correct, Your Honor. I think it's significant because when assessing how the other circuit courts that have addressed this question got to the conclusion  JUSTICE SCALIA. And so it's really irrelevant what the actual substance was, the controlled substance that the defendant had in the prior offense. We have to close our eyes to what it was because we ask only whether this is an indivisible statute. If we ask only is it an indivisible statute and did it cover something that the federal statute doesn't, if we decide that that's what we have to do rather than to simply say it's controlled by state law. Controlled substance means was it illegal under state law? MR. DENTON. That's correct. I think that's the import of Harbin. And I think that's where this, that takes this Court further away from the courts that have addressed the definition of controlled substance issue differently. Because, again, in the Ninth Circuit you're talking about a very different analysis and, frankly, a very different outcome. I don't think we can ignore the way outcomes drive these decisions when the Ninth Circuit is saying, well, we'll say it's got to be the federal list for controlled substances. That's not really going to have an outcome difference here because everybody agrees it was heroin or amphetamines or whatever. And so we can get to the same conclusion. So this Court's already going a different direction with respect to this issue than those other courts. And that raises a serious concern in terms of the continuing applicability of the guidelines because to adopt the defendant's approach here, combined with the holding in Harbin, is going to result in a world where there are very few qualifying controlled substance convictions that are qualified as predicates under the guidelines. OUT OF STATE COURTS. OUT OF STATE COURTS. Yes, that's correct, Your Honor. Or local courts for that matter as well. But the Sentencing Commission can rectify that problem, right? Well, I don't think the Sentencing Commission has a problem to fix, Your Honor, because to the extent there's ambiguity, an important ambiguity here that affects the length of sentences that people are subject to, they have the authority to clarify it. The Sentencing Commission can certainly always respond, Your Honor, to fix whatever they think needs to be fixed. That certainly could be done here by adopting the more formal form of saying a controlled substance as defined under 841. And I think that's the distinction that Justice Ginsburg drew out significantly for the Supreme Court in Mullooly v. Lynch. Justice Ginsburg had no problem concluding that controlled substance, unadorned by the cross-reference to federal law, means a substance controlled by whatever jurisdiction is doing the controlling. And it does have some effect on my thinking about this to note that less than half of the states criminalize these forms of fentanyl. I mean, this is a shifting sands kind of basis to sentence people on. And these have significant consequences in sentencing. I'm disquieted by that observation. Well, I think that, Your Honor, that issue goes the other way and goes to states' interests in this. For example, New York State is in the process of scheduling additional substances addressing a particular opioid crisis here in New York and is making things criminal in order to address a local concern. Under those circumstances, it seems decidedly problematic for the federal government to come in and say, we disagree with your efforts to exercise your legislative prerogatives. That makes your offense not generic. And therefore, people who have committed serious crimes that have serious negative impacts in the jurisdiction in which they were committed have no enhanced effect on their federal sentences for later offenses. That's one of the things Judge Nathan hit on significantly in LaBois, which is the other significant district court opinion addressing this issue, is that, again, that disquiet can go both ways very easily. But it makes for discrepancies in sentencing that are significant to individuals in the context of the prosecution for a federal crime. Well, I think it's important to distinguish between a discrepancy in the guidelines calculation and a discrepancy in the ultimate sentence. It always remains within the district court's discretion to acknowledge information brought to their attention by the defense counsel that this is a rare substance, that this person got convicted in Arizona for something that only Arizona criminalizes. Right. But one of the purposes of the guidelines as envisioned by Judge Frank, I think it was, way back when, was to try to make it uniform around the country. So this sort of flies in the face of that, has the potential to fly in the face of that. And also, we are enjoined to look at the offense in a generic way and often don't have access to the actual information about prior convictions and the drugs of interest. That's how we ended up in the categorical approach, as I understand it. That's, like I said, Your Honor, that's certainly true with respect to the guidelines calculation. I think that does not bind the district court's ability to consider facts relevant to the district court's determinations of sentencing. With respect to the concern about uniformity, I think it's not an issue of substantive uniformity that the guidelines are promoting. It is a uniform treatment of like-situated defendants. Nothing about what the government is saying here would result in different defendants convicted of the same predicate offenses being treated any differently. It would just result in defendants who have been convicted in crimes under some states getting those convictions counted, as opposed to the defendant's approach, which would mean that the commission's goal of providing for enhanced sentences for people who commit controlled substance crimes, essentially never receiving enhancements, regardless of what the underlying drug offense was, no matter how serious, simply because the DEA administrator has decided at a particular point in time to delist some substance. And so at that point, it's unclear why the DEA administrator is a better arbiter of what is a generic drug offense than, for example, the New York State Board of Health or the Arizona legislature, which does these things through enactment. So where you have these constantly shifting sands, we still have to apply the controlled substance guideline. So the question becomes, is this that category where there is no generic offense? It's not a necessary condition to find a generic offense every time. That's what the Supreme Court said in Nijewan. So where you have something where the very definition of the term is simply a substance controlled by whomever is doing the controlling, it seems reasonable to say that the commission's use of that term meant to incorporate the state laws doing the controlling. That was the distinction the Supreme Court found significant in Malooly. It was the distinction that the district court found here. And that correctly ensures that people who have committed serious predicate crimes get the guideline enhancements that the commission intended for them. Thank you. Thank you. Thank you, Mr. Danton. Mr. Lee, you've reserved two minutes. Yes, Your Honor. So just a few quick points. First, the definition from Savin that I wanted to quote was 2T1.1 Application Note 3. That's the only one that I found in which the guidelines sort of set an enhancement based on a state offense, however a state wants to define it. And there it says criminal activity means any conduct constituting a criminal offense under federal, state, local, or foreign law. That is very different than the definition we have here. And it's that kind of plain indication, clear statement that you need to depart from this very strong presumption that federal sentencing predicates have uniform national federal definitions. And then second, the government's argument here, you know, is really this idea that while it's whatever, if you look at the dictionary, it's whatever the jurisdiction thinks is controlled. That's really, that argument is on all fours with the argument that the Supreme Court rejected in Esquivel-Quintana. There, the offense was sexual abuse of a minor, which is of course also not a common law offense. It's something that was sort of made up, right? And the government's argument there was the idea that, well, you know, what's a minor? A minor is someone below the age of consent. And what's the age of consent? Well, you know, it's whatever a jurisdiction says is the age of consent. It's all over the place, right? And the Supreme Court rejected that argument and said, no, no, that turns the categorical approach on its head. And the Supreme Court went on to find a generic federal age of consent at 16, and then found that the California law there, which set, like New York said it at 18, didn't qualify. Plus the Supreme Court said the term was unambiguous. What Congress intended was unambiguous. Well, can we say that what the Sentencing Commission did here was unambiguous? Well, you don't need to, I guess is my point. You don't need to because the presumption Why don't we don't need to answer that question? Then Esquivel-Quintana isn't relevant. It is. I beg to differ, Your Honor. It is relevant because there's such a strong presumption running through all of the Supreme Court's cases about federal sentencing predicates, that you look for a uniform federal definition, that it would be such a departure from that sort of uniform course to say, oh, this offense is whatever a state chooses. Let's say Utah wants to control caffeine, that a conviction under that would count. And then the final point I would make is this government's idea that if you rule in my favor, the sky is going to fall. And that's just based on all sorts of false assumptions about we don't know what kind of laws are out there, whether they're divisible or not. In Harbin, I think this Court pointed out that it's only this particular New York law, Criminal Sale in the Fifth, that had this extra substance, HCG. All the other ones, the ones that we frequently see in this district and in this circuit, do not have that extra one and would count. And then, of course, those three other circuits that Judge Cotto pointed out, the state statutes there were, in fact, divisible, and so you could apply the model fad categorical approach. And then, finally, the last word I'll say is that this is, of course, the advisory guidelines, right? You know, the circuit still instructs the district judges to still, you know, follow the categorical approach and to find the range, but after that, the district judges certainly are free to look at the, to make a preponderance finding about the actual facts of the underlying offense and the past offense and sentence based on that. It's surprising to hear you argue that the determination of the guidelines really doesn't make a difference because it's up to the district court eventually to apply the guidelines with all of the discretion. That seems to run counter to the arguments I usually hear from your office that any error in calculating the guidelines has enormous significance and can't be ignored. I'm not saying it makes a difference. It's a different courtroom. I'm not saying it doesn't make a difference, Your Honor. I'm absolutely not saying it doesn't make a difference. I'm just saying that it's not like a district judge is handcuffed and, you know, has to put the blinders on and can't consider the nature of the offense. That's all I'm saying. And that you could take that into account in sentencing the defendant. Thank you, Your Honor. Thank you very much to both of you. Well argued. Appreciate it. Keep an eye on the cases that we've talked about. Obviously, we know you will. And depending on what they say, I don't, we may ask for supplemental briefing, letter briefing. Thank you.